UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
CHARLES D. AUSTIN
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7810
MDD_CDAChambers@mdd.uscourts.gov

April 4, 2024

LETTER TO ALL COUNSEL OF RECORD

Re:  *John A. v. Martin O'Malley, Commissioner, Social Security Administration*[1]
     Civil No. 23-905-CDA

Dear Counsel:

On April 4, 2023, Plaintiff John A. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny his claim for benefits. ECF 1. This case was then referred to me with the parties' consent. *See* 28 U.S.C. § 636; Loc. R. 301 (D. Md. 2023). I have considered the record in this case (ECF 9) and the parties' briefs (ECFs 13, 14, 15). No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). This Court must uphold the SSA's decision if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Accordingly, I will REVERSE the SSA's decision and REMAND the case to the SSA for further consideration. This letter explains why.

I. **PROCEDURAL BACKGROUND**

Plaintiff protectively filed a Title II application for Disability Insurance Benefits ("DIB") on March 29, 2017, alleging a disability onset of October 26, 2015. Tr. 148–49, 1072. Plaintiff's claim was denied. Tr. 63–66. As Plaintiff's claim was designated a "Disability Redesign Prototype Case," Plaintiff bypassed the reconsideration step of the administrative review process and requested a hearing.[2] Tr. 62, 67–68. An Administrative Law Judge ("ALJ") held a hearing on February 13, 2019. Tr. 29–56. On February 27, 2019, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act[3] during the relevant time frame. Tr. 7–23. The Appeals Council declined to review the February 27, 2019 decision. Tr. 1–6.

---

[1] Plaintiff filed this case against Kilolo Kijakazi, the Acting Commissioner of Social Security, on April 4, 2023. ECF 1. As Martin O'Malley became the Commissioner of Social Security on December 20, 2023, the Court substitutes him as this case's Defendant. *See* Fed. R. Civ. P. 25(d).

[2] When the SSA designates a disability case as a "disability redesign prototype case," the claimant may "request a hearing without first requesting reconsideration." *Edwards v. Astrue*, No. 10-1088, 2011 WL 1430324, at *1 n.6 (E.D. Pa. Apr. 6, 2011) (citing 20 C.F.R. § 404.906(a)), *report and recommendation adopted*, 2011 WL 1449546 (E.D. Pa. Apr. 14, 2011).

[3] 42 U.S.C. §§ 301 et seq.

*John A. v. O'Malley*
Civil No. 23-905-CDA
April 4, 2024
Page 2

After Plaintiff sought judicial review of the decision, Tr. 1142–48, this Court remanded Plaintiff's case to the SSA, Tr. 1149–53. The Appeals Council then vacated the decision and remanded Plaintiff's case to an ALJ. Tr. 1156–60. A different ALJ held a hearing on January 11, 2023. Tr. 1078–1118. On February 1, 2023, that ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time frame. Tr. 1057–77. The February 1, 2023 decision is the final, reviewable decision of the SSA. *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); *see also* 20 C.F.R. § 404.984(d).

II. **THE ALJ'S DECISION**

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). The ALJ is required to evaluate a claimant's disability determination using a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520. "Under this process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to [their] past relevant work; and (5) if not, could perform any other work in the national economy.'" *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

Here, at step one, the ALJ found that Plaintiff "did not engage in substantial gainful activity during the period from his alleged onset date of October 26, 2015 through his date last insured of March 31, 2016." Tr. 1062. At step two, the ALJ found that Plaintiff suffered from severe "Post Traumatic Stress Disorder, Unspecified Depressive Disorder, Generalized Anxiety Disorder, Cervical (and Thoracic) Degenerative Disc Disease and Obesity." *Id.* Insofar as Plaintiff's "Dysfunction [of the] Major Joints (Right Knee), Obstructive Sleep Apnea, Hypertension and Diabetes Mellitus" could "be established in the . . . evidence," the ALJ found that they were non-severe. Tr. 1063. At step three, the ALJ found that Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1" through the date on which he was last insured. *Id.* The ALJ then found that Plaintiff had the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) except the claimant is occasionally able to climb ramps or stairs; never able to climb ladders, ropes or scaffolds; Frequently able to balance; occasionally able to stoop, kneel, crouch or crawl; Limited to frequent use of the left upper extremity for overhead reaching or operation of hand controls; Limited to frequent use of the left upper extremity for fine fingering or grasping/handling of small objects; Must avoid work at unprotected heights or around dangerous moving machinery (i.e. Fork Lifts, etc.); Able to understand and carry out simple instructions and routine, repetitive tasks; Able to apply commonsense understanding to carry out detailed, but uninvolved, instructions; Avoid work requiring a high-quota production-rate pace (i.e., rapid assembly line work where co-workers are side-by-side and the work of one affects

> the work of the others); Able to perform work activities for up to 2 hours at a time but would then become distracted, causing the individual to be off task. However, time off task can be accommodated with normal breaks; Occasionally able to change activities or work settings during the workday without it being disruptive; Occasionally able to deal with changes in a routine work setting; Able to occasionally interact with supervisors, co-workers and/or the general public; and must avoid concentrated exposure to vibration[.]

Tr. 1065–66. The ALJ determined that Plaintiff was unable to perform any past relevant work but could perform other jobs that existed in significant numbers in the national economy. Tr. 1070–71. Therefore, the ALJ concluded that Plaintiff was not disabled. Tr. 1072.

### III.  LEGAL STANDARD

The Court's review is limited to determining whether substantial evidence supports the ALJ's findings and whether the ALJ applied the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The [ALJ's] findings . . . as to any fact, if supported by substantial evidence, shall be conclusive[.]" 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is "more than a mere scintilla" and "somewhat less than a preponderance." *Id*. In conducting the "substantial evidence" inquiry, the Court considers whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale. *See, e.g.*, *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision[.]").

### IV.  ANALYSIS

On appeal, Plaintiff argues that the RFC lacks the support of substantial evidence because the ALJ failed to conduct a function-by-function analysis of Plaintiff's exertional capabilities. ECF 13, at 7–23. Plaintiff also contends that the ALJ failed to "build an accurate and logical bridge" between the evidence and the conclusion that Plaintiff's moderate limitations in concentration, persistence, and pace ("CPP") could be accommodated by avoiding work requiring a production-rate pace and working in increments of two hours. *Id.* at 14. Defendant counters that, "although the ALJ may not have conducted an explicit function-by-function analysis, it is apparent . . . how the ALJ determined Plaintiff's capacity to perform the relevant functions[.]" ECF 14, at 8. Defendant does not address Plaintiff's CPP-related argument.[4] *See generally id.*

When a claimant has a mental impairment, an ALJ is required to make "'a specific finding

---

[4] Defendant construes Plaintiff's brief as only challenging the ALJ's "physical findings." ECF 14, at 6 n.2. However, the Court does not read Plaintiff's brief so narrowly. Plaintiff asserts that the ALJ contravened Social Security Ruling ("SSR") 96-8p by failing to explain how the evidence supported "a limitation in the RFC that was meant to accommodate Plaintiff's moderate limitations in maintaining concentration, persistence or pace[.]" ECF 13, at 14.

as to the degree of limitation in each of' the four areas of functional limitation listed in [20 C.F.R.] § 404.1520a(c)(3)." *Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 659 (4th Cir. 2017) (quoting 20 C.F.R. § 404.1520a(e)(4)). One of these areas is CPP, which concerns "the abilities to focus attention on activities and stay on task age-appropriately." 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00(E)(3). A "moderate" CPP limitation means that a claimant's ability to sustain CPP "independently, appropriately, effectively, and on a sustained basis is fair." *Id.* § 12.00(F)(2)(c).

"[O]nce an ALJ has made a . . . finding that a claimant suffers from moderate difficulties in [CPP], the ALJ must either include a corresponding limitation in [their] RFC assessment, or explain why no such limitation is necessary." *Talmo v. Comm'r, Soc. Sec. Admin*, No. ELH-14-2214, 2015 WL 2395108, at *3 (D. Md. May 19, 2015) (citing *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015)), *report and recommendation adopted*, (D. Md. June 5, 2015). An ALJ may not account for a claimant's moderate CPP limitations by restricting the RFC to simple, routine tasks or unskilled work without explaining why such provisions adequately address the claimant's CPP limitations. *See Mascio*, 780 F.3d at 638; *Shinaberry v. Saul*, 952 F.3d 113, 121–22 (4th Cir. 2020). However, when a medical opinion provides "detailed findings" regarding a claimant's "sustained concentration and persistence limitations," an ALJ may account for those limitations by assigning persuasive weight to the opinion and incorporating the opined limitations into the RFC. *See Sizemore v. Berryhill*, 878 F.3d 72, 80–81 (4th Cir. 2017).

Here, the ALJ determined that Plaintiff had moderate CPP limitations. Tr. 1064. As support for this conclusion, the ALJ noted that Plaintiff "complain[ed] of difficulty concentrating. However, his concentration was intact, he had logical and goal directed thought processes, and he was not described as overly distractible or slow." Tr. 1065. The ALJ "accounted for" Plaintiff's CPP limitations by: (1) restricting Plaintiff from "work requiring a high-quota production-rate pace (i.e., rapid assembly line work where co-workers are side-by-side and the work of one affects the work of the others)" and (2) limiting Plaintiff to "perform[ing] work activities for up to 2 hours at a time"—a limitation that the ALJ determined could "be accommodated with normal breaks." Tr. 1068. But the ALJ did not explain how either of these limitations were intended to address Plaintiff's moderate CPP limitations.

The Court agrees with Plaintiff that this lack of explanation constitutes error. A claimant's RFC represents "the most [he] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1). Social Security Ruling ("SSR") 96-8p details the steps an ALJ must take when assessing a claimant's RFC. *See generally* SSR 96-8p, 1996 WL 374184 (July 2, 1996). The ruling provides that "[t]he RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* at *7. Here, the ALJ contravened SSR 96-8p by failing to explain how the evidence specifically supports the RFC's provisions regarding production-rate pace or working in two-hour increments. *See id.*

Having found that the ALJ committed error, the Court must determine whether the error warrants remand. Ordinarily, remand of an SSA decision for legal error is unwarranted unless a plaintiff shows that the error was harmful. *See Josiah T. v. Comm'r, Soc. Sec. Admin.*, No. SAG-20-3572, 2022 WL 684944, at *2 (D. Md. Mar. 8, 2022) (citing *Shinseki v. Sanders*, 556 U.S. 396,

409 (2009)).  Plaintiff does not state whether the ALJ's failure to adequately explain the RFC's CPP-related provisions was harmful.  *See* ECF 13, at 14.  Nevertheless, remand is appropriate if "inadequacies in the ALJ's analysis frustrate meaningful review." *Mascio*, 780 F.3d at 636.

Here, given the ALJ's lack of explanation, the Court is "left to guess" how the ALJ determined that a production-pace restriction or a restriction to working in two-hour increments accommodates Plaintiff's moderate CPP limitations.  *Id.* at 637.  Moreover, the ALJ did not explicitly base these RFC provisions on any opinions contained in the record.  *Cf. Sizemore*, 878 F.3d at 80–81 (affirming an ALJ's decision where: (1) the ALJ adopted certain RFC limitations suggested in a medical opinion that provided "detailed findings" on a claimant's "sustained concentration and persistence limitations" and (2) the ALJ assigned the opinion "significant weight").  These gaps in the ALJ's analysis frustrate meaningful review and warrant remand.  *See Mascio*, 780 F.3d at 637.

On remand, the ALJ must either: (1) explain how the RFC addresses Plaintiff's moderate CPP limitations or (2) explain why no RFC limitation is necessary to address these limitations.[5] *See Talmo*, 2015 WL 2395108, at *3; *Mascio*, 780 F.3d at 638.

### V.    CONCLUSION

For the reasons set forth herein, the SSA's judgment is REVERSED due to inadequate analysis pursuant to sentence four of 42 U.S.C. § 405(g).  The case is REMANDED for further proceedings in accordance with this opinion.  The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as a Memorandum Opinion.  A separate implementing Order follows.

Sincerely,

/s/

Charles D. Austin
United States Magistrate Judge

---

[5] Because the case is being remanded on these grounds, the Court need not address Plaintiff's other arguments.  On remand, the ALJ is welcome to consider those arguments and, if warranted, to adjust their decision accordingly.  In remanding for further explanation, the Court expresses no opinion as to whether the ALJ's conclusion that Plaintiff is not entitled to benefits is correct.